Williams, C. J.
The rule of the common law, that the appointment and qualification of a debtor as the executor of his creditor ’ s estate, operated as a legacy of the debt and discharged the executor from its payment, never obtained in this state. On the contrary, it has been' the established law from an early period, that the debt becomes assets with which the executor is chargeable, and at its maturity is treated as paid, and thereafter as so much money in his hands, for the faithful administration and distribution of which, in accordance with the law and the will, the sureties on the executor’s *498 bond, are responsible. Tracy v. Card, 2 Ohio St., 431; Hall v. Pratt, 5 Ohio, 73; Bigelow v. Bigelow, 4 Ohio, 138. That rule was carried into the legislation of the state as early as the administration act of March 2, 1840, and has since continued to be a statutory regulation governing the accountability of executors, and the liability of their sureties. The provision is now embraced in section 6069 of the Revised Statutes, which declares, as did section 66 of the act of 1810, that: “The naming of any person executor, in a will, shall not operate as a discharge or bequest of any just claim which the testator had against such executor; but such claim shall be included among the credits and effects of the deceased in the inventory and the executor shall be liable for the same as for so much money in his hands at the time such debt or demand becomes due; and he shall apply and distribute the same in payment of debts and legacies and among the next of kin as part of the personal estate of the deceased. ’ ’
The indebtedness of the executor to the testator being regarded by the law as so much money in his hands, and assets in' that form, with which he is chargeable in the administration of his trust, its proper application and distribution by him to the parties entitled thereto, is a duty coming within the conditions of the bond which the executor is required to give, and for the performance of which the sureties undertake to be responsible; so that, their liability for his failure to make faithful administration of that fund is within the express terms of their obligation. That this is so as a general rule is not disputed; but it is claimed an exception exists, or should be made, where the executor is insolvent at the time of his appoint *499 ment and continues to be so until the final settlement of the estate, for the reason, as it is said, that it would be a hardship on the sureties in such a case, to hold them for the executors individual debt to the testator, when they contemplated and intended no further responsibility by their obligation of suretyship than that for the performance of his duties in the administration of the actual assets which are within his control; and in that respect, his indebtedness to the testator is, or should be, on no different footing from that of other debtors. This claim was made in Tracy v. Card, supra, where the court, untrammelled by any legislation on the subject, and free to adopt a rule which would seem most salutary, declined to sanction the exception contended for; and it has never found its way into our legislation. The statute declares, in explicit terms, that in the administration of his trust the executor shall be liable for any indebtedness of his to the testator, “as for so much money in his hands” at the time it becomes due, and “shall apply and distribute the same in the payment of debts and legacies, and among the next of kin as part of the personal estate of the deceased. ” The language includes all executors indebted to their testator, imposes the same duties upon all alike, and applies the same rule to all without distinction between those that are solvent and those that are insolvent, or on account of any circumstance or' condition whatever . If such distinction, or any distinction had been intended, it could easily have been made, and would have readily occurred to the legislative body, especially in view of the previous decisionsof the court establishing the same rule declared by the -the statute. The failure to make the distinction sug *500 gested, would therefore seem to have been intentional; but if it were not, the courts cannot supply the omission, without a manifest encroachment upon the province of the legislative body. Sureties on the bonds of executors, like other sureties, are presumed to contract in view of the law in force at the time controlling their liability, and it is not a hardship to hold them to the obligation which the law attaches to their undertaking whpn it is entered into, in any other sense than that a security debt is a hard debt to pay. The penalty of the bond is fixed bjr the court g’ranting testamentary letters, with reference to the probable amount of the estate to be administered, and the securities are advised thereby of the extent of their liability, and of its nature 'by -the conditions of the bond; and the rule declaring their liability for the executor’s indebtedness to the testator, as money, has been so long and uniformly adhered to, that its enforcement now cannot with propriety be characterized as a hardship or injustice.
It may well be doubted whether the statute, with a provision like that sought to be engrafted upon it, would be as just and wholesome in its operation, as it now is without it. As the executor cannot sue himself, and all resort to legal process and proceedings for the eollection'of the debt owing by him to the testator is cut off by his appointment, in every case where his insolvency, total or partial, should be asserted for the relief of his sureties, an investigation into his financial condition during the continuance of his trust would become necessary, in which he would occupy the conflicting relations of the representative of the estate, charged with the duty of diligence in its behalf, and of a debtor, whose interest *501 it would be to escape the payment, of his debt, and save his sureties therefrom. Such an inquiry, with the difficulties that must necessarily be encountered, would at best be an unsatisfactory and inadequate substitute for the remedies ordinarily afforded by the law for the enforcement of the collection debts. At all events, the uniformity and certainty of the rule as we find it established, has commendedit to both the legislature and the courts as the sounder and safer one, and, as said by Thurman, J., in Tracy v. Card, supra, if it had proven otherwise, “it would not have stood unquestioned so long.”
Nor is the rule qualified or affected by section 6181, of the Revised Statutes, which provides that; “No executor or administrator shall be accountable for any debts inventoried as due to the deceased, if it shall appear to the court that they remain uncollected without his fault.” Debts due from the executor to the testator, are, by force of section 6069, transmuted into money in his hands, and being so, in the language of the court in Hall v. Pratt, supra, “no act of the parties can return them back to an obligation;” so that, they cannot be classed with uncollectible nor uncollected debts, within the purview of section 6181.
The principal contention of the defendants in error is, that they did not become liable on the bond of Jacoby’s executor, or were discharg-ed from liability thereon, on account of his fraud in obtaining their signatures to it, as alleged in the answer; and the case of Campbell v. Johnson, 41 Ohio St., 588, is relied on in support of this contention. In that case, the widow, after becoming the sole owner of all the estate left by the deceased husband, by assignments from the heirs, *502 and knowing that in the condition of the estate no administration was necessary, fraudulently conspired with her son, who was indebted to the estate and wholly insolvent, to procure his appointment as administrator, and by false representations and concealments induce the sureties who did so to go upon his bond, and thus make them responsible for the son’s debt, for the sole benefit of the widow. To carry out this fraud, to which the widow was a party, the son whose appointment was so procured, made his settlement, charging himself with the amount of his debt to his intestate, and nothing else, which amount was found due from him to the estate and ordered by the court to be distributed. The widow thereupon brought suit for the same on the administration bond, and the sui-eties set up the fraud as a defense; that defense was demurred to, and the demurrer was sustained by the lower courts. In reversing the judgment below the court said: “In this state it has been settled that the debt of an administrator is not released by his appointment and acceptance of the trust, but that his debt becomes assets in his hands and covered by the administration bond. Tracy v. Card, 2 Ohio St., 431. But the case presented by the first.defense of Campbell’s answer and the demurrer thereto, is not controlled by this rule. The allegations of this defense, which are admitted to be true by the demurrer, show a cunningly devised scheme, amounting to a fraud on the part of the sole beneficiary of the estate and the administrator to make Campbell responsible for a worthless claim. This scheme cannot be made effective by the courts, and the demurrer should have been *503 overruled.” The principle upon which that decision rests is the familiar one, that a party cannot be allowed to profit by his own fraud, or use the courts to aid him in its consummation. That principle is lacking in this case. The action by the plaintiff below, the administrator de bonis non, with the will annexed, was prosecuted for the benefit of all persons interested in the estate, and it becomes his duty to pay out and distribute all the estate recovered by him to the persons entitled thereto, none of whom are charged in the answer with participation in, or knowledge of the fraud perpetrated upon the defendants. That fraud, as alleged in the answer, consisted wholly of false representations and concealments made by Josiah Jacoby as an individual, before he qualified as executor of the estate, with which, so far as is shown by the answer, the beneficiaries of the estate were in no wise concerned, and of which they were all entirely innocent. It is argued, however, that as Jacoby’s fraud operated to create the estate sought to be recovered, the beneficiaries, by claiming the estate, must be held to -have adopted the fraud, and to be bound by it; and it is asserted as an elementary proposition, that whoever claims the benefit of a fraudulent transaction is estopped from denying .participation therein. It will be found, we think, that the application of that principle is limited generally to cases where there was existing some relation of agency of the person guilty of the fraudulent conduct to the party seeking to enforce the transaction. This is recognized in Bank v. Lucas, 26 Ohio St., 385, where the payee of a note on which there were two sureties, agreed with the principal, at its maturity, to give further time for its *504 payment, if he would procure a new surety named, in the place of one of those already on the note. The principal accordingly took the note to the proposed new surety and procured his signature to it by fraud, and returned it to the payee, who was without knowledge of the fraud. It was held, in an action by the payee, on the note, that the principal in procuring the name of the new surety, did not act as the agent of the payee, and that the new surety was bound, notwithstanding the fraud of the principal. Welch, -C. J., in the opinion says, that true, the signature of Boteler, the new surety, “was obtained by fraudulently representing that Lucas (one of the original sureties), consented to the arrangement; but this was the fraud of Calhoun (the principal), and the bank, (the payee), was in no sense a party to it. Calhoun, in procuring the signature of Boteler, did not act as the agent of the bank, as counsel seem to suppose. He acted entirely on his own behalf and for his own interest, and the cashier of the bank merely consented that he might do so. ’ ’ For reasons not less forcible, is the proposition advanced by counsel for the defendants in error, inapplicable to a case like the one before us. Bond with sufficient sureties, is exacted by law of an executor, in order to protect the creditors and beneficiaries of the estate in the interests to which they are respectively entitled, and secure its payment and distribution to them at the proper time. iffie court of probate of the proper county is the sole authority clothed with the power and charged with the duty of taking and approving the bond. In discharging that duty the court is concerned only with the due form and execution of the bond in a sum sufficiently large to cover the estate with *505 which the executor may become chargeable, and the pecuniary responsibility of the sureties offered for that amount. It is not the duty of the court to inquire into the representations made to the bondsmen to induce them to become such, nor is that expected to be done. But when the bond, in due form, with qualified sureties, is executed and approved, the letters are issued and the executor is let into possession of the estate. Neither the court, nor the executor named in the will, can be said, in any proper sense, to be the agent of the beneficiaries, or acting with their consent. They are often infants, sometimes-persons non compos, or under other disability renderin them incapable of authorizing or consenting to any act of the court or éxecutor, and if not so, they have no potential voice in regard to the bond or sureties thereon. In making and approving the bond the court is simply in the performance of an official duty, and the executor in procuring the sureties, acts in his own behalf and interest, and not as a representative of the beneficiaries. Until the bond is executed and approved, his representative character does not begin, and even after that, he is not an agent authorized to bind the beneficiaries, but must discharge his duties as required by law and the will. It is the bond executed by the sureties which enables the executor to come in possession of the estate, and if he should then squander it, and the sureties be held released from its obligation by his false representations in procuring them to enter into it, the purpose of the bond would be' defeated. The loss suffered by the beneficiaries would be the result of the wrong which the act of the sureties, in becoming such, enabled the executor to commit, and the *506 greater his fraud the more certain the escape of his sureties, however innocent the beneficiaries might be. The sureties trust the executor, the beneficiaries do not; and the latter, when innocent themselves of any fraud cannot, we think, on any just principle, be affected by that of the executor.

Judgment reversed and cause remanded.